IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KIMBERLY MONTGOMERY                                                                            PLAINTIFF

vs.                                         Civil No. 4:06-CV-04074

MICHAEL J. ASTRUE[1]                                                                            DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

Kimberly Montgomery ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying her applications for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[2] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff filed two applications for SSI that are now before this Court. (Tr. 44-47, 49-61). The first application for SSI was protectively filed on July 21, 2004, and the second was protectively

---

[1] Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for acting Commissioner Jo Anne B. Barnhart as the defendant in this suit.

[2] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

1

filed on January 23, 2006. (Tr. 44-61). These applications allege an onset date of February 16, 2002.[3] (Tr. 44). In these applications and in other documents filed with the SSA, Plaintiff alleges she is disabled due to her seizures, migraine headaches, hydrocephalus, nausea and dizziness associated with headaches, hypertension, convulsions secondary to postpartum eclampsia and vasospasm, panic attacks, and blackout spells. (Tr. 50, 74, 81, 104, 107, 117, 143, 147, 155, 243, 253).

Plaintiff's first application was initially denied on October 14, 2004. (Tr. 26-32). The transcript has no record of Plaintiff requesting a reconsideration of this application. (Tr. 1). There is also no record of an initial disability determination or a reconsideration of the disability determination for the second application. (Tr. 1). Presumably, both applications were denied initially and on reconsideration. Thereafter, Plaintiff requested, and was granted, an administrative hearing to reconsider these two disability determinations. (Tr. 34-36, 62-68, 248-268). This hearing was held on March 2, 2006 in Texarkana and Little Rock, Arkansas *via* video teleconferencing. (Tr. 10, 248-268). Plaintiff was present and was represented by an attorney, Greg Giles, at the hearing. (Tr. 248-268). Plaintiff and Diane Smith (a vocational expert) testified at this hearing. *Id.* At the time of the hearing, Plaintiff was twenty-three (23) years old, was classified as a "younger individual," and had a high-school education. (Tr. 17, Findings 7-8, 251).

On May 24, 2006, the Administrative Law Judge ("ALJ") issued a written opinion. (Tr. 8-17). The ALJ determined that Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since her alleged onset date or since February 16, 2002. (Tr. 16, Finding 1). The ALJ found that

---

[3] Plaintiff claims in her appeal brief that her onset date was July 21, 2004. (Doc. No. 9, Page 1). This is not, however, the date stated in Plaintiff's applications. This Court will use February 16, 2002 as the onset date.

Plaintiff has been treated for hypertension (controllable with medications), hydrocephalus (stable), a seizure disorder, and complications from a pregnancy. (Tr. 16, Finding 2). The ALJ found these impairments were severe but were not sufficiently severe to meet the requirements of impairments listed in, or medically equal to ones listed in, Appendix 1, Subpart P, Regulations No. 4 ("Listings"). *Id.*

The ALJ evaluated Plaintiff's subjective complaints and determined Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 16, Finding 4). First, the ALJ evaluated Plaintiff's subjective complaints pursuant to Social Security Regulation ("SSR") 96-7p and *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984), and determined that Plaintiff's testimony was not fully credible. (Tr. 11-16, 16, Finding 3). Second, the ALJ determined that Plaintiff retained the RFC to perform "work-related activities except for work involving lifting more than 20 pounds and in jobs which do not allow for seizure precautions." (Tr. 16, Finding 4). The ALJ determined that Plaintiff also retained the RFC to perform the following:

> . . . at least the narrow range of the light work activity, which involves lifting no more than twenty-five pounds at a time. The claimant also needs to observe routine seizure precautions, which are avoiding unprotected heights, open and dangerous machinery, and the operation of automotive equipment or carrying firearms.

(Tr. 17, Finding 6).

Based upon this RFC finding, the ALJ determined whether Plaintiff would be able to perform her Past Relevant Work ("PRW") or perform work that exists in significant numbers in the national economy. (Tr. 15-16). As of the date of the hearing, Plaintiff had never worked and, consequently, had no PRW that she could perform. (Tr. 265). The ALJ found that Plaintiff could, however, perform work that exists in significant numbers in the national economy. (Tr. 17, Finding 10). Vocational Expert ("VE") Diane Smith, a rehabilitation program specialist for Arkansas

3

Rehabilitation Services, testified at the administrative hearing and addressed this issue. (Tr. 37-43, 266-267). She testified that Plaintiff, with the RFC listed above, could perform work as a cafeteria attendant or counter attendant or wrapper. (Tr. 266). She testified that there are over 15,000 such jobs regionally and over 200,000 such jobs nationally. *Id.* She also testified that Plaintiff could perform work in the unskilled light factory production area. *Id.* She testified that there are over 40,000 such jobs regionally and over 800,000 such jobs nationally. (Tr. 267). Based upon the VE's testimony, the ALJ concluded that Plaintiff was not disabled.[4] (Tr. 17, Finding 10).

On August 19, 2006, the Appeals Council declined to review the ALJ's May 24, 2006 hearing decision, and the ALJ's disability determination became the final decision of this case. (Tr. 3-7). Subsequently, Plaintiff filed the present action. (Doc. No. 1). The case was referred to the undersigned on February 20, 2007. Plaintiff and Defendant have both filed appeal briefs. (Doc. Nos. 9-10). This case is ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have

---

[4] Plaintiff claims the ALJ in the present action stopped his analysis at Step 4. (Doc. No. 9, Page 4). This statement is incorrect. The ALJ clearly stopped his analysis at Step 5, not at Step 4.

4

supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any SGA. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the RFC to perform his or her relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are

other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920.

**3. Discussion:**

Plaintiff brings the present appeal claiming that she is physically disabled and that the ALJ's disability determination is not supported by substantial evidence. (Doc. No. 9, Pages 5-17). Although Plaintiff's brief does not clearly state her points of error, Plaintiff appears to claim that the ALJ erred (A) in finding Plaintiff did not meet the requirements of the Listings, (B) in discounting Plaintiff's subjective complaints, (C) in evaluating Plaintiff's RFC, and (D) in relying upon the testimony of the VE in his disability determination. *Id.*

Defendant argues that Plaintiff has not met the requirements of any of the Listings and has not stated *which* Listing she meets. (Doc. No. 10, Page 6). Defendant argues that the ALJ properly evaluated Plaintiff's credibility pursuant to the factors in *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) and that the ALJ's RFC determination–that Plaintiff can work with "routine seizure precautions"–is supported by substantial evidence in the record. *Id.* at 10-13. Finally, Defendant argues that the ALJ properly relied upon the testimony of the VE in determining that Plaintiff could perform other jobs that exist in significant numbers in the national economy. *Id.*

**A. Application of the Listings**

In her appeal brief, Plaintiff claims she is disabled because her impairments are sufficiently severe to meet the requirements of the Listings. (Doc. No. 9, Page 5). Plaintiff, however, does not specify in her appeal brief which Listings she claims to meet. *Id.* There are fifteen body systems

6

listings that each contain a number of different medical disorders, and Plaintiff has not indicated to this Court which of her body systems meets the requirements of the Listings.  Absent such a showing, Plaintiff's claim that she meets the requirements of the Listings is overly broad, and this Court cannot determine, and will not evaluate, whether Plaintiff meets these requirements.

Although she does not specifically mention which of the Listings she claims to meet, Plaintiff appears to claim that she meets the epilepsy listings or Listing 11.02 and 11.03. (Doc. No. 9, Page 5).  However, Listings 11.02 and 11.03 both require a "detailed description of a typical seizure pattern." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007).  This Court has reviewed the medical records in the present action, and Plaintiff has not provided a "detailed description of a typical seizure pattern."  Thus, Plaintiff cannot meet the requirements of Listings 11.02 and 11.03.

**B. Credibility Determination**

Plaintiff claims the ALJ erred in discounting Plaintiff's subjective complaints regarding her limitations and symptoms. (Doc. No. 9, Pages 11-15).  Plaintiff claims the ALJ did not adequately question her about her daily activities prior to discounting her subjective complaints.  *Id.* at 11.  Plaintiff also claims the ALJ incorrectly based his credibility determination on minor, as opposed to major, inconsistencies between the record and her testimony. *Id.* at 12-13.  Furthermore, Plaintiff claims the ALJ improperly discounted her medical records, including a report from Dr. Buono, which support Plaintiff's claim that she is disabled. *Id.* at 15.

Defendant claims that the ALJ properly evaluated Plaintiff's credibility pursuant to the requirements of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984).  (Doc. No. 10, Pages 10-13). Defendant claims that the ALJ's credibility determination was based upon more than mere "minor inconsistencies" and that the ALJ properly analyzed Plaintiff's impairments based upon the objective

7

evidence in the record. *Id.*

In assessing the credibility of a claimant, the ALJ is required to examine and to apply the five factors from *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984). These five *Polaski* factors, which provide as follows, must be analyzed and considered in light of the claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the limitation; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the functional restrictions. *See id.* at 1322. The ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ acknowledges and examines these factors prior to discounting the claimant's subjective complaints. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000). Furthermore, a credibility determination is within the ALJ's discretion. *See Woodruff v. Astrue*, No. 06-1818, 2007 WL 913854, at *1 (8th Cir. 2007). As long as the ALJ's credibility determination is supported by several valid reasons that are included in his or her opinion, then the court must affirm that determination. *See id.*

This Court finds that even though the ALJ could have been more clear in his *Polaski* analysis, the ALJ gave several valid reasons for discounting Plaintiff's subjective complaints, and his credibility determination should be affirmed. *See id.; Polaski,* 739 F.2d at 1320. Furthermore, the ALJ's reasons for discounting Plaintiff's subjective complaints are more than simple "minor inconsistencies" but are premised upon the factors in the *Polaski* decision. This Court will review each of the *Polaski* factors as follows.

**(1) Plaintiff's Daily Activities**

First, in order to satisfy the requirements of *Polaski*, the ALJ is required to review and to analyze the plaintiff's daily activities. In the present action, in analyzing Plaintiff's daily activities,

the ALJ noted that Plaintiff claims she is extremely restricted in her daily activities. (Tr. 11). The ALJ then stated that her claimed restrictions are not the result of any functional restrictions but are voluntary and self-imposed. *Id.* The ALJ provided no basis for finding that these restrictions are voluntary and self-imposed or for finding that Plaintiff's claimed limitations are not credible. *Id.* Clearly, the ALJ could have more thoroughly questioned Plaintiff during the administrative hearing regarding her daily activities and included more analysis in his opinion regarding her daily activities. However, as noted above, the ALJ is not required to fully analyze each *Polaski* factor in order to meet the requirements of *Polaski*, and this Court should not reverse the ALJ's credibility determination based upon his analysis of this factor. *See Lowe,* 226 F.3d at 971-72.

### (2) Duration, Frequency, and Intensity of the Limitation

Second, the ALJ is required to determine the duration, frequency, and intensity of the plaintiff's claimed limitation. In the present action, the ALJ noted that Plaintiff claims she suffers from "chronic seizure activity." (Tr. 12). The ALJ found that this claim was not supported by the medical records. *Id.* The ALJ failed to explain *how* the medical records did not support this finding or *which* medical records were inconsistent with Plaintiff's claim that she suffers from chronic seizures. However, later in his opinion, the ALJ did note that Plaintiff complained of chronic seizure problems, and yet, did not visit a physician for her seizures for almost two years (from February 2002 until January 2004). (Tr. 13, 95). The ALJ stated, "One has to wonder why she [Plaintiff] waited for almost two years while according to her allegations, she was still having headaches and seizure activity." *Id.* The ALJ also referenced a follow-up doctor's visit on February 7, 2006 where the physician stated that Plaintiff had not been experiencing any additional seizures. *Id.* Thus, based upon the foregoing, the ALJ did adequately analyze the duration, frequency, and intensity of

9

Plaintiff's claimed limitation.

### (3) Precipitating and Aggravating Factors

Third, the ALJ is required to discuss the precipitating and aggravating factors for the plaintiff's claimed limitation. In this case, the ALJ noted one aggravating factor: that stress or "getting upset" aggravates Plaintiff's condition. (Tr. 12). The ALJ did not reference any other precipitating or aggravating factors. The ALJ discounted this aggravating factor, stating that no mental health professional or other doctor has ever found that Plaintiff suffers from such a limitation. (Tr. 12). Upon review of the transcript in this case and Plaintiff's appeal brief, this Court notes that the transcript does not appear to include any medical records indicating that Plaintiff suffers from this limitation. Thus, the Court finds the ALJ also properly analyzed this factor.

### (4) Dosage, Effectiveness, and Side Effects of Medication

Fourth, the ALJ is required to discuss the plaintiff's medication, including the dosage, effectiveness, and side effects of that medication. In this case, the ALJ noted that, at the time of his opinion, Plaintiff was taking Phenytoin, Diclofenaland, and Hydrocodone. (Tr. 12). The ALJ noted that Plaintiff had previously taken Dilantin, which appeared to control her seizures and headaches. (Tr. 12-13). Plaintiff even admitted that her headaches were controlled with "medication," presumably the Dilantin. (Tr. 229, 252-253). *See Brown v. Barnhart,* 390 F.3d 535, 540 (8th Cir. 2004) (holding that an impairment that is controlled with medication is not disabling).

Plaintiff, however, voluntarily and seemingly without justification, stopped taking Dilantin when she was pregnant. (Tr. 98-99, 229, 252-253). Plaintiff denied that she stopped taking Dilantin. (Tr. 263-265). The ALJ, however, noted that Plaintiff's medical records indicate that Plaintiff did, in fact, stop taking Dilantin and that Plaintiff's denial of that fact was not credible: "they [Plaintiff's

10

doctors] took her off the Dilantin at one time when she had no seizure activity and that when she was pregnant, she discontinued the use herself. The treatment notes are supportive of wide gaps in her medication regime . . . ." (Tr. 12). The ALJ also later noted that Plaintiff's failure to take her Dilantin while she was pregnant indicates that she does not suffer from the limitations claimed: "failure to follow prescribed treatment is a factor that may be used to discredit a claimant's subjective allegations and I may later determine that an impairment is reasonably remediable." (Tr. 15).

Finally, the ALJ noted Plaintiff never sought aggressive medical treatment for her claimed "disabling pain," presumably from her headaches, and that this finding indicates that she was, in fact, not suffering from disabling pain. (Tr. 15, 72). Accordingly, based upon the foregoing, the ALJ properly analyzed this fourth *Polaski* factor.

**(5) Functional Restrictions**

Fifth, the ALJ is required to discuss the plaintiff's functional limitations and restrictions. In the present action, the ALJ noted that Plaintiff claimed she was limited in her ability to "sit, stand, walk, lift, and carry." (Tr. 12). The ALJ noted that this "very restricted pattern of limitations and restrictions" was inconsistent with Plaintiff's medical records. *Id.* The ALJ noted that the only medical records that support this finding were from Dr. Bruono, who claimed Plaintiff was disabled due to her seizure disorder. (Tr. 13). However, as noted by the ALJ, Dr. Buono was primarily treating Plaintiff for hydrocephalus, not her seizure disorder, and his opinion regarding her seizures is not binding on the ALJ. *Id.; See Dickerson v. Apfel,* 221 F.3d 1342, 2000 WL 559204, at *2 (8th Cir. May 9, 2000); 20 C.F.R. § 404.1527. Thus, the ALJ properly analyzed this factor.

Accordingly, pursuant to this Court's review of the ALJ's credibility determination and

*Polaski* analysis, the ALJ in the present action based his credibility determination upon several valid findings, and his credibility determination should be affirmed. *See Woodruff v. Astrue*, 2007 WL 913854, at *1.

**C. Residual Functional Capacity Determination**

Plaintiff claims the ALJ erred in determining her RFC. (Doc. No. 9, Page 16). Specifically, Plaintiff claims the ALJ erred in failing to consider the impact her seizures would have on her ability to consistently perform work without excessive absences. *Id.* Plaintiff claims that her seizures would debilitate her four or five times a month, which is equivalent to a twenty (20) percent absenteeism rate. *Id.* Defendant claims that Plaintiff's inability to work four to five times a month is not supported by the medical records in the transcript and that the ALJ properly discounted Plaintiff's subjective allegation regarding this limitation. (Doc. No. 10, Page 14).

After a thorough review of Plaintiff's medical records, this Court finds that the ALJ did not err in his RFC determination. The ALJ's RFC determination–that Plaintiff is able to be consistently present at work–is supported by substantial evidence in the record. As an initial matter, a number of Plaintiff's medical records relate to her pregnancies, and these medical records provide little guidance in evaluating Plaintiff's seizure disorder. (Tr. 109-118, 123-127, 132-158, 218). However, a number of Plaintiff's medical records also support a finding that Plaintiff suffers from a seizure disorder that is controlled with medication. (Tr. 90-108, 159-160, 162-184, 228-232). As noted above, Plaintiff's medical records, dated October 4, 2004, state that Plaintiff's seizures and headaches are controlled with medication. (Tr. 229). One of Plaintiff's most recent medical records from the physician treating Plaintiff for her seizures, Dr. Shanna Spence, which is dated February 7, 2006, states that Plaintiff had experienced no recent seizures. (Tr. 228). Plaintiff has not directed

this Court to any credible medical records or other documents indicating that she is unable to be consistently present at work or medical records indicating that her seizures currently are not controlled with medication. The only other evidence supporting Plaintiff's claim is Plaintiff's testimony that she is unable to work "at least four to five times a month." (Tr. 261). As noted above, these subjective complaints were properly discounted by the ALJ. Thus, this Court finds that the ALJ's RFC determination is supported by substantial evidence and should be affirmed. *See Brown,* 390 F.3d at 540 (holding that an impairment that is controlled with medication is not disabling).

**D. Vocational Expert's Testimony**

Plaintiff also claims that the testimony of the VE establishes that she cannot perform any job in the national economy. (Doc. No. 9, Page 16). Plaintiff notes that the VE testified that Plaintiff could not perform any work in the national economy if Plaintiff could not be present at work twenty (20) percent of the time. *Id.* Plaintiff claims that she cannot be present at work 20 percent of the time and, consequently, cannot perform any work in the national economy. *Id.* Defendant argues that Plaintiff's claimed limitation is not supported by the evidence in the record and that Plaintiff's claimed limitation is not as severe as she alleges. (Doc. No. 10, Page 13-14). Furthermore, Defendant notes that the ALJ questioned the VE regarding the impairments the ALJ found to be true and credible and that the VE testified that Plaintiff, subject to those impairments, could perform work that exists in significant numbers in the national economy. *Id.* at 13-14.

This Court finds the ALJ did not err in finding that Plaintiff can perform work that exists in significant numbers in the national economy. The ALJ included in his hypothetical to the VE Plaintiff's impairments and limitations that he accepted as true. (Tr. 266-267). As noted above, the

ALJ properly discounted Plaintiff's subjective complaints, including Plaintiff's claim that she has to be absent from work 20 percent of the time. The ALJ is only required to include in his hypothetical to the VE the impairments that are supported by substantial evidence in the record and accepted as true by the ALJ.  *See Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001). The ALJ complied with this obligation in the present action, the VE testified that Plaintiff could perform work that exists in significant numbers in the national economy, and, therefore, the ALJ's decision should be affirmed.

**4. Conclusion:**

Based on the foregoing, the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **14th day of June, 2007.**

/s/   Barry A. Bryant
Honorable Barry A. Bryant
United States Magistrate Judge